## Case No. 1,095.

### BASSETT v. ORR et al.

[7 Biss. 296.][1]

Circuit Court, E. D. Wisconsin. Oct. Term, 1876.

CREDITORS' BILL—EXECUTION — RETURN OF MARSHAL, PRESUMED TRUE—BURDEN OF PROOF—EVIDENCE—AMOUNT OF PROPERTY.

1. If it is apparent that there was no bona fide attempt made by the officer to find property to satisfy the judgment, a creditor's bill will be dismissed.

2. As the basis for a creditor's bill, an execution upon the judgment should be in good faith issued, and should be returned unsatisfied by the officer upon a reasonable and actual but ineffectual effort to find property. If the return of the officer on its face shows a failure in this respect then there is no foundation for equity jurisdiction.

3. The marshal is not bound to hold the execution the sixty days it might run before making a return, as the remedy at law might be exhausted before the expiration of the return day, and in that case the execution could be immediately returned.

4. When the return of the marshal is on its face complete and sufficient, the presumption is that the return is true and that the officer performed his duty; such presumption is not overcome by the fact that he returned the process on the day he received it, as he might have previous knowledge of the judgment debtor's property and situation.

5. The burden of showing the return false is upon the defendant.

6. The return is a sufficient basis for a creditor's bill.

7. The falsity of the return may be shown by establishing that the debtor had property liable to execution and which could have been levied on to pay the debt.

8. It is not necessary that there should be property sufficient to fully satisfy the execution in order to defeat the remedy in equity, and if there be property sufficient to satisfy a considerable portion of the debt a creditor's bill ought not to be sustained until such property is exhausted.

9. In this case, property being mortgaged and defendant's affairs complicated, the bill was sustained.

In equity. The complainants [Henry D. Bassett, surviving partner] recovered a judgment against the defendant Hunter Orr, in this court, April 15th, 1875. Execution was issued upon the judgment and delivered to the marshal April 16th, 1875, and was returned by him on the same day nulla bona. The defendant's residence was at Oconto, in this state. On the 17th of April the complainants commenced this action against the judgment debtor, and other parties, which was in the form of a creditor's bill, to reach property for the satisfaction of the judgment. A receiver was appointed in the action April 29th, and an injunction was issued and served November 6th, 1875. The bill was in the usual form.

Defendants pleaded, averring that the marshal made no attempt to find property from which to make the amount of the execution issued upon the judgment, and that he returned the execution without any effort to discover or levy upon property; that the judgment debtor at the time owned property consisting of lands and a saw mill, in the county of Oconto, of value more than sufficient to satisfy the judgment and execution.

Upon the issue thus made, and the testimony, the defendants insisted that the bill should be dismissed. [Denied.]

Tenneys, Flower & Abercrombie, for complainants, cited First Nat. Bank v. Gage, 8 Chi. Leg. N. 370.

John J. Tracy, for defendant, Orr; with whom was H. M. Finch, who cited Gibson v. Woodworth, 8 Paige, 131; McElwain v. Willis, 9 Wend. 549; Smith v. Thompson, 1 Walker, Ch. 1; In re Remington, 7 Wis. 643; Reed v. Wheaton, 7 Paige, 664; Voorhees v. Howard, *43 N. Y. 371; Crippen v. Hudson, 3 Kern. [13 N. Y.] 161; Cassidy v. Meacham, 3 Paige, 311; Riopelle v. Doellner, 26 Mich. 102.

DYER, District Judge. To permit a judgment creditor to issue an execution upon his judgment, and to procure its immediate return, "No property found," when in fact no effort whatever had been made by the officer to find property, and when in fact the debtor had tangible, visible property from which the amount of the judgment could be realized, and then to suffer the creditor to make such proceedings the basis of a creditor's bill, would be a perversion of the plainest principles of equity practice applicable to the subject. Upon such a state of facts being shown, I should not hesitate to dismiss the bill.

In this case it is claimed:

I. That it is apparent on the face of the marshal's return, considered in connection with the dates of the entry of judgment, of the issuance of execution, of the return itself, and of the filing of this bill, that there was no bona fide attempt made by the officer to find property.

II. That upon the testimony the court should conclude that the marshal was directed by the creditor to return the execution, "Nothing found," without any effort to discover property.

III. That to lay the basis for a creditor's bill the execution should not have been returned until the return day thereof, and that by its terms the officer had sixty days within which to look for property and to return the execution.

IV. That the judgment debtor owned visible property upon which the judgment was a lien and from which the amount of the judgment could have been made at the time the execution was returned.

It is insisted either that the bill should be dismissed, or that all proceedings subsequent to the filing of the bill should be set aside,

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

and the bill be entertained only in aid of the execution.

The testimony taken upon the issue formed by the bill and plea, hardly warrants the conclusion that the execution was returned by the marshal, "No property found," under direction of the judgment creditor's attorneys so to make return. The only testimony upon that subject is that of Mr. Tenney, one of the attorneys, who testifies that he presumes the marshal was instructed to make such a return in case he found he could collect nothing, and that he supposes the marshal made his return as it was made, because he was satisfied he could make nothing by levy.

I do not think the marshal was bound to hold the execution the sixty days it might run, before making a return. In other words, the remedy at law might be exhausted before the expiration of the return day, and in that case the execution could be immediately returned. There are cases to the contrary in New York, but they arose and were decided upon ancient statutes of that state. The cases cited upon the argument, Smith v. Thompson, 1 Walker, Ch. 1, and First Nat. Bank v. Gage, 8 Chi. Leg. N. 370, are in antagonism upon the point. The practice sanctioned by the courts of this state is against the theory that a creditor's bill cannot be filed until after the return day of an execution, although the execution should be actually returned before that time. The test is, and I think should be,. has the remedy at law been exhausted before the exhibiting of the bill; and I understand that in this court under the established practice, such a bill may be presented, though the execution be in fact returned before the return day, if the bill is otherwise within the equity rules.

As the basis for a creditor's bill, an execution upon the judgment should be in good faith issued, and should be returned unsatisfied by the officer after a reasonable and actual but ineffectual effort to find property. In other words, the remedy under the execution should first be exhausted. If the return of the officer on its face shows a failure in this respect then there is no foundation for equity jurisdiction. As in the case of In re Remington, 7 Wis. 643, cited on the argument, where the officer made return by order of the attorney and returned only that there was no personal property whereon to levy, which was held insufficient to support proceedings in the nature of a creditor's bill. If there be collusion between the officer and the party and a false return is made, proof of the fact is of course fatal to a bill. Here the return of the marshal is on its face complete and sufficient. The presumption is that the return is true. The presumption is that the officer performed his duty. That presumption is not overcome by the fact that he returned the process on the day he received it. We do not know but that on some other process, or by some other means, he had previously had occasion to investigate, and had acquired knowledge of the judgment debtor's property and situation. In any event we have to presume the return true until the contrary is shown, and the burden of showing the return false is upon the defendant. Unattacked, and supported by this presumption, the return is a sufficient basis for a creditor's bill. Its falsity may however be shown by establishing the fact that the debtor had property liable to execution, and which could have been levied on to pay the debt. Such fact should be clearly and satisfactorily shown. In such event a creditor's bill could not be maintained. I do not regard it essential that there should be property sufficient to fully satisfy the execution in order to defeat the remedy in equity. If there be property sufficient to satisfy a considerable part of the debt, a creditor's bill ought not to be sustained until such property is exhausted.

The remaining question then is, does it clearly and satisfactorily appear from the testimony that the judgment debtor had tangible property and effects, real or personal, from which the debt or a considerable part of it could be realized? The defendant testifies that he owns a quantity of pine lands from which the timber has been cut off, and the amount and value of which he does not state, but which lands are incumbered by mortgage to the extent of between four and five thousand dollars. Then the firm of Hunter Orr & Co. owned a saw mill standing on leased land. The defendant Orr testified that the mill cost $22,000. In November, 1875, there was rent unpaid for the leased land amounting to about $700, and also some taxes. The yearly rent agreed to be paid was $600 or $700. In April, 1875, the mill was let to the sons of the defendant Orr, his firm having previously discontinued business; but those lessees in November, 1875, had paid no rent for the use of the mill. There was a judgment in favor of one Somers against Orr, upon which there was originally due about $5,200, but which had been reduced by levy and sale of property, to about $3,000; and for the payment of which the property of Orr seems to have been liable. Then Blanchard, Borland & Co., of Chicago, held a transfer of defendant's interest in the mill and leasehold, as security for a balance due to them on account of advances. Mr. Blanchard testifies that the value of the mill was much affected by the fact that it stood on leased lands, that there was a large amount of the rental and taxes unpaid, and that the owner of the lands would not permit the removal of the mill. With permission to remove the mill and after paying all delinquent taxes and rents, and securing the payment of the rent for the term of the lease, he thinks the mill might have been sold for between $3,000 and $4,000. Viewing the property just as it stood in April, 1875, and without special reservations touching removal of the mill, and payment of

taxes and rent, he does not think the property had any salable value. Considering all the evidence bearing upon the circumstances of the judgment debtor, the character, value and situation of his property and the incumbrances upon the same, it is by no means clear that any part of the complainants' judgment could have been realized by ordinary proceedings upon the execution.

The testimony taken as to property possessed by the defendant, tends to the conclusion that there is slight basis, if any, so far as property is concerned, for a creditor's bill. The plea will be overruled as a plea, and as it presents the only issue in the case which the defendants seek to raise, it may stand as an answer to the bill, with the right to the parties of bringing forward all the merits of the case.